as Dixon v. Brown. Good morning, Your Honors. May I proceed? Good morning, and may it please the Court. My name is John Powers. I represent the defendant appellants Leonard Brown, Joel Dorchester, and Andrew Murphy. The appellants are challenging the District Court's denial of qualified immunity on summary judgment, and they are taking the position that there is no Second Circuit or Supreme Court judgment. And I would like to briefly address appellate jurisdiction first, and then the application of the Qualified Immunity Doctrine. Maybe not briefly on the jurisdictional issue. Okay. And I think that you'll find that they're related, Your Honors. So this Court has, there's no question, it only has limited jurisdiction to consider interlocutory appeals of qualified immunity denials. Under the Collateral Order Doctrine, this Court can only hear a qualified immunity appeal if it can be decided as a matter of law. What that typically means is that where there is a factual dispute, if that factual dispute is material to the outcome, then the Court has to adopt the plaintiff's version of the  And I guess along those lines, we've said that if you want to come to us on appeal after the District Court has found that there is a genuine dispute, the fact that you need to accept the plaintiff's version of the facts, and then we move forward, right? Absolutely. And if you can win on the plaintiff's version. And I guess as I read through your brief, there are all sorts of, in your recitation of facts, many instances where you're not. I mean, you recite the facts as though we're supposed to take your client's view. And maybe a jury would do that, but, you know, looking at page 16, you know, Officer Brown and Dorchester gave Mr. Dixon multiple orders to stop resisting, to which he did not comply. Well, that's what the judge said is in dispute, right? I mean, Mr. Dixon disputes that. And again, maybe you're right, maybe a jury would completely agree with you, but over and over, you have statements that present your client's affidavits or statements that are simply contradicted by the other side. And I guess I'm confused as to how we're supposed to follow on your brief if we only have jurisdiction if you're accepting the other side's view of the facts, because that's not how it reads. Well, if that is the, if that's how it reads, that's not the intent. And I would take a slight issue with you indicating that the plaintiff disagrees that he was given commands to... No, no, no, whether he resisted. Isn't that the whole dispute, right? He claims his arms were pinned under him and he couldn't get them out. Your clients say he was resisting. He says I wasn't resisting. That's a dispute. I mean, is that, are you saying that he's not claiming that his arms were pinned under him and that he couldn't get it out? Our position is that, and we are adopting as true his testimony that he was physically unable to remove his hands from underneath his body. How do you say, faced with his active resistance to handcuffing, and you're saying now that you accept his testimony that his arms were pinned and he couldn't resist, and yet at 16 you say, faced with Mr. Dixon's active resistance, how is that accepting his testimony? The distinction is that his inability to remove his hands from underneath his body was unknown to the police officer. So I'm accepting that that is a factual issue in dispute, whether or not he was unable to remove his hands, but the fact that he was commanded to remove his hands and that he didn't remove his hands is undisputed. Now, the reason, now that's a factual dispute, Your Honor. I recall from your brief, you do say the officer saw the plaintiff tensing his arms, right? And that seems to be part of the officer saw what they perceived as active resistance. The problem with that is the plaintiff is saying, I wasn't resisting. I was helpless with people on top of me, so I couldn't move my arms. And to determine the reasonableness of the officer's view of the situation, it seems like the fact finder needs to determine some factual questions. Well, and I understand that argument. That's certainly the argument that the plaintiff has made, but I would cite this case to Tracy v. Freshwater. Well, Tracy was an appeal from a grant of qualified immunity, and there the facts, at least with regard to, I mean, I wrote Tracy. I remember some of it. I made it. It was the facts were all known and undisputed as to what happened before the flashlight was used. The question for appellate jurisdiction and the question for purposes of qualified immunity is the same, and it's whether or not this professed inability to remove the hands is material to the question of qualified immunity. We're taking the position it's not, and precisely because of Tracy v. Freshwater. And the first, you may recall, Your Honor, the first of the four force incidents that was considered was striking Mr. Tracy with a flashlight. And up until the time that he was struck, he was completely compliant. He got out of the car at the request of the officer. He put his hands over his head at the request of the officer. When he was asked to turn around, he slipped on ice, and he made a sudden movement and braced himself on the car. That's when he was struck with the flashlight. And this Court found the officer was entitled to qualified immunity based on what the officer perceived. And the plaintiff made the same argument there. Wait a minute. So what does the record here reflect? What do the undisputed facts here show about what the officers perceived? What the undisputed facts show here is, first of all, that this is an individual that was a high threat level coming into the incident. They had information to believe that he had tried to strike two police officers. They personally observed him failing to pull over in a vehicle pursuit, driving recklessly. And they were giving him, when he was on the grounds, they were giving him commands to surrender his arms, which he was not complying with. Once he did — On that point, the reason why he was not complying, I understand your argument to me, doesn't matter because it was reasonable for the officers to think that he was resisting. So whether he was actually pinned and couldn't move his arms or was actually resisting is the thing that is disputed. And you are accepting their version, his version, that it was because he couldn't. But that does not matter whether he was actually resisting or not because that was the officer's perception. Am I getting your point? You're right, Your Honor. And I think that's what the Supreme Court said in White v. Pauly, that the facts have to be knowable to the police officer. And that was precisely the case in Tracy because Tracy had an innocent reason for what he did. He did not intend to resist. He — there was a question of fact as to the reasonableness of the officer's perception, but qualified immunity was still appropriate. But I guess I understand the focus certainly is on the reasonableness of the officer's perceptions based on the — so I guess the — maybe not the undisputed facts, but at this point the facts taken in the view most favorable to your opponent.  But isn't the question, you know, he says, well, there were these two guys on top of me and my hands were underneath my body. And that viewed in the light most favorable to him, a jury could conclude that any reasonable officer would have thought, well, there's no way that guy's going to get their hands out. There's no way a guy can get their hands out with a couple of cops on his back. So how is that not now a dispute for a jury to figure out, yeah, of course a cop would look and be like, well, of course he can't squeeze his hands out. He's got people on top of him. Now, maybe a jury would say, well, that's ridiculous. Come on. Of course he can get his hands out. Or that, of course, it was reasonable for the police not to quite realize that or not to think that. But I guess how do we decide as a matter of law that the cops must have — the only reasonable perception they could have had is that, no, no, this guy is choosing not to pull his hands out. Well, I would say, first of all, that I don't believe that's the standard, that the only reasonable perception is that the person is refusing to pull their hands out. Okay. But on a broader level, I would think that your point, which is a fair one, is can you conclude, is there a fair inference that the officers knew that he couldn't pull his hands out? Because in that case, the force would be gratuitous. Right. But the closer question, which I think the answer is no, is the question of should they have known. And if the question is should they have known, then qualified immunity is appropriate because that same argument could have been made in Tracy. Did he say anything? Or does he say he said anything? He didn't tell the police officers. There was — there's no factual predicate for this Court or any court to find that there's a question of fact that those officers knew that he was physically unable to pull his hands out. Every — virtually every — Well, they can see what's going on. I mean, he doesn't have to tell them. Well, they can see. His arms are underneath them. Right. If a jury could reasonably infer from the situation that someone watching, you know, a cop whose involvement in seeing this would think, oh, I don't think he can get his hands out, then all of a sudden we have a factual dispute, right? If there was a factual predicate for that inference. Right. That's what I'm saying. But there's not. And if a jury could — if we conclude that a jury could figure out what the cops must have thought based on what they saw, not necessarily what he said, I mean, yeah. Right. He said, ow. I think his testimony was something to the effect where he said, ow, not that he said I can't get my hands out.  Yes. But, I mean, I don't think — if a jury concluded that notwithstanding that he said that he could or couldn't get his hands out, that simply what was going on and who was on top of him, that it's just not clear. Right. But I don't think — Why is that not a factual dispute at this point? Well, you can't draw an inference from a vacuum. That inference can't be drawn from the officer's testimony, and it can't be drawn from the plaintiff's testimony. There's a vacuum as to who is on top of whom? I beg your pardon, Your Honor? There is a vacuum of evidence as to the relative position of all these people. I thought there was clear testimony. He testifies. He's on the ground. He's got his hands under him. And there are two cops on top of him. So I don't think that's a vacuum. Right? We have that testimony. We've got to credit it for present purposes. I guess I'm asking why could a jury not conclude from that that it would have been obvious to anybody looking at the situation that this guy's arms were stuck underneath him? And, again, maybe they would look at it and say no. But why couldn't a jury conclude it was obvious to anyone looking that the guy couldn't get his hands out? They could certainly conclude that he was telling the truth about not getting his hands out. But they couldn't conclude — there's not a reasonable basis for them to conclude that the officers knew he couldn't. Now, and you look at the other facts, Your Honor. As soon as his hands came out and he was handcuffed, the force stopped. That's a fact against finding that this is a gratuitous use of force. Even the plaintiff himself agreed that the officers didn't know that he couldn't remove his hands. Now, he can't get into their heads, of course. He can't testify about what's in their heads. But when a witness, especially the plaintiff, testifies to that, he's testifying that there was nothing about what they were doing that indicated to him that they knew he couldn't get his hands out, and he didn't tell them. And, by the way, and I would be remiss if I didn't bring it up, in Serrano v. United States in the Tenth Circuit, a very similar case to this case, where force was used on a person after a high-speed chase, including strikes, because he was not complying with handcuffing efforts, there was also an innocent reason. He had been paralyzed on one side of his body from being hit with a bullet. The Tenth Circuit, this is in 2018, the Tenth Circuit still granted the officers qualified immunity because the officers didn't know that. They also found it significant that he didn't tell the officers, just like what happened here. And I'm not saying that's dispositive, Your Honor, but that's, you know, we're looking at the factual record.  Well, the obvious distinction there is that nobody would be able to visually tell that he's paralyzed. And considering that, the only way to get out from that would be to inform them that he's paralyzed. I think the counterargument on the side here, the other side here, is that it would have been visually evident to the officers that his arms were pinned under him and that there was the weight of two people who were preventing that from happening. That, I think, is the counterargument, that there was a visually evident impediment to that. And the question is whether that would have been perceptible to the officers, as opposed to paralysis, which it's not. Well, it's precisely the reason that his hands are underneath them that makes him a threat. And it's precisely the reason that the hands are underneath them that they are taught to use strikes. Now, it can't be the rule of law, and I don't think there was a case that said prior to 2017 that officers needed to confirm that an arrestee was able to comply with their instructions or their efforts to secure his hands prior to using strikes, prior to using these hard, empty-hand controls. That's what qualified immunity is about. And, Your Honor, I see that I'm way over time, but I rest on my papers for the remainder of our arguments. Thank you. Thank you for your arguments, and we will take the matter under advisement.